# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In re:                                     )
                                           )
Dennis W. Hollingsworth and                )
Martha J. Hollingsworth,                   )      Case No.: 07-05759-BGC-13
                                           )
            Debtors.                       )


                                           )
Dennis W. Hollingsworth and                )
Martha J. Hollingsworth,                   )
                                           )
            Plaintiffs,                    )
                                           )
vs.                                        )      AP No.: 08-00244-BGC
                                           )
Option One Mortgage Corp. and              )
American Home Mortgage                     )
Servicing, Inc.,                           )
                                           )
            Defendants.                    )

### Memorandum Opinion

The matters before the Court are:

1.    The <u>Plaintiff's Motion for Partial Summary Judgment</u> (A.P. Docket No.
      140);

2.    <u>Option One Mortgage Corporation's Motion for Summary Judgment</u> (A.P.
      Docket No. 150);

3.    <u>American Home Mortgage Servicing, Inc.'s Motion for Summary Judgment
      and Notice of Filing Memorandum in Support of its Motion for Summary
      Judgment Under Seal</u> (A.P. Docket No. 159); and,

4.    The <u>Plaintiffs' Motion to Strike Portions of the July 8, 2010 Affidavit of
      Alicia Fisher</u> (A.P. Docket No. 155).

     After notice, a hearing was held on October 5, 2011. Appearing were:  Mr.
Lange Clark and Mr. Robert C. Keller, the plaintiffs' attorneys; Mr. Shaun K. Ramey and
Ms. Meaghan E. Ryan, the attorneys for the defendant, American Home Mortgage

Servicing, Inc.; Mr. Stephen A. Walsh and Mr. Richard Carmody, the attorneys for the defendant, Option One Mortgage Corp., and Mr. D. Sims Crawford, the Standing Chapter 13 Trustee.

The motions were submitted on the record in this proceeding, the records in Bankruptcy Case No. 07-00675-BGC13 and Bankruptcy Case No. 07-05759-BGC13; affidavits submitted by the defendants; depositions and documents attached to and included with the motions and briefs; and arguments and briefs of counsel.

Having duly considered the same, this Court is of the opinion that (1) there remain for resolution no genuine issues of material fact; (2) the defendants are entitled to judgment as a matter of law; and (3) the plaintiffs' motion to strike is moot.

## I. Background

Option One Mortgage Company, "OOMC", holds the mortgage on the plaintiffs' primary residence. The plaintiffs were not current on that mortgage when they filed their first Chapter 13 bankruptcy case, Case No. 07-00675, on February 13, 2007. OOMC filed Claim No. 6 in that case for $8,467.90 representing those arrears.

As required by section 1321 of the Bankruptcy Code, 11 U.S.C.A. § 1321, the plaintiffs filed a payment plan for their bankruptcy case. As allowed by section 1322(b)(5) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), that plan included a provision for curing the arrearage they owed to OOMC. Through that provision, the plaintiffs proposed to pay OOMC $500 per month over the life of their plan. To fund those payments, and others, the plaintiffs' proposed to pay $834.00 per month to the Chapter 13 trustee for distribution to creditors. The plaintiffs proposed to pay OOMC directly for their regular, postpetition, monthly mortgage payments beginning with the July 2007 payment.

The plaintiffs' plan was confirmed by this Court on August 14, 2007, (Case Docket No. 47), but they later defaulted on their plan payments. As a result, their case was dismissed on November 6, 2007. (Case Docket No. 61.)  The final report filed by the trustee in that case reflects that OOMC received $1 towards satisfaction of its claim. (Case Docket No. 63.)

The plaintiffs filed a second Chapter 13 case, Case No. 07-05759, on December 17, 2007. OOMC filed Claim No. 5 on February 1, 2008, in this second case for $22,736.49, and amended on it October 22, 2009, to $23,776.94.  Both amounts represented arrears on the plaintiffs' mortgage. The plaintiffs' plan filed in this case proposed to cure the plaintiffs' arrearage to OOMC over the life of the plan at $400 per month.  (Case Docket No. 3.)  Again, the plaintiffs proposed to pay OOMC directly on their regular monthly mortgage payments beginning with the payment due January 2008 payment. This plan was confirmed on March 5, 2008.

2

The pending adversary proceeding was filed on October 30, 2008.  (A.P. Docket No. 1.)

## II.  The Plaintiffs' General Contentions

The gravamen of the complaint is that while OOMC, and later its assignee, American Home Mortgage Servicing, Inc. ("AHMS"), internally posted property inspection fees and attorney fees they incurred in managing the plaintiffs' mortgage during the plaintiffs' <u>two</u> bankruptcy cases, they failed to disclose those fees or failed to obtain approval of them from the bankruptcy court.  The plaintiffs contend those actions violated several bankruptcy law provisions.

In addition, the plaintiffs contend that AHMS actually collected a portion of those fees by applying funds from the plaintiffs' mortgage "suspense" account.  The plaintiffs also contend that this action violated bankruptcy law provisions.

Discussion of the plaintiffs' contentions begins with the impact of the posting of the subject fees during the plaintiffs' <u>first</u> bankruptcy case and OOMC's actions in that case.[1]  It follows then with the same impact during the plaintiffs' <u>second</u> case.

## III.  Findings of Fact, Contentions, and Conclusions of Law about the "First-Case" Fees and OOMC's Actions in the First Case

### A.  Findings of Fact

In his oral argument, the plaintiffs' attorney itemized $364 in fees that his clients now contend OOMC improperly posted to their mortgage account during their first bankruptcy case without disclosing them either in a proof of claim or an application made pursuant to Bankruptcy Rule 2016. Those were:

a.    A property inspection fee of $9.60 on March 7, 2007.
b.    A property inspection fee of $9.15 on March 22, 2007.
c.    An attorney's fee of $300.00 on April 2, 2007.
d.    A property inspection fee of $9.15 on April 19, 2007.
e.    A property inspection fee of $9.15 on May 25, 2007.
f.    A property inspection fee of $9.15 on June 22, 2007.
g.    A property inspection fee of $9.15 on July 19, 2007.
h.    A property inspection fee of $9.15 on August 23, 2007.

------

[1] AHMS was not involved in this first case. OOMC did not transfer its claim to AHMS until July 30, 2008. See "Transfer of Claim Other Than For Security," Docket No. 80 in Bankruptcy Case No. 07-05759.

3

The plaintiffs admit that the first-case fees were authorized by the mortgage documents. They also admit that OOMC was oversecured.  See Plaintiffs' Brief in Support of Their Motion for Partial Summary Judgment, (A.P. Docket No. 140 filed on June 28, 2010, under seal), page 35.  "The Hollingsworths do not dispute that Defendants are oversecured creditors.  The Hollingsworths also do not dispute that the charges were provided for in the mortgage." Id.

The plaintiffs do not contend that any of the fees are, as a matter of fact, unreasonable in amount.  Instead, they argue that those fees should be considered unreasonable per se because they were, according to the plaintiffs, not disclosed in either a proof of claim or Bankruptcy Rule 2016 application.

The documents submitted by both the plaintiffs and the defendants in support of their summary judgment motions, especially the "Customer Account Activity Statement" maintained by OOMC, clearly and unquestionably reflect that during the first case, OOMC did not obtain payment or reimbursement of those first-case fees or attempt to collect them from the plaintiffs.  Plaintiffs' Evidentiary Submission in Support of Motion for Partial Summary Judgment (A.P. Docket No.  139), Exhibit F; Defendants' Joint Evidentiary Submission in Opposition to Plaintiffs' Motion for Class Certification (A.P. Docket Nos. 141 & 142), Exhibit B.  OOMC's employees merely entered the first-case fees on its "Customer Account Activity Statement," an internal bookkeeping document.

Both plaintiffs admitted in their depositions that, during the first case, OOMC did not collect those fees from them or attempt to collect those fees from them. And, the record is vacant of any evidence which suggests that OOMC added those fees to the balance of the plaintiffs' mortgage debt during the course of that case.

## B.  The Plaintiffs' Specific Contentions and the Court's Conclusions of Law

Most, if not all, of the plaintiffs' first-case contentions are addressed by decisions of the Court of Appeals for the Eleventh Circuit in Jacks v. Wells Fargo Bank (In re Jacks), 642 F.3d 1323 (11th Cir. 2011) and Telfair v. First Union Mortg. Corp., 216 F.3d 1333 (11th Cir. 2000). The impact of those decisions on each of the plaintiffs' specific contentions is discussed below.

The plaintiffs contend first that OOMC violated three automatic stay provisions of the Bankruptcy Code by posting its first-case fees in the plaintiffs' "Customer Account Activity Statement." Those three provisions, as described in Jacks, are:

(1) section 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" (2) section 362(a)(5), which prohibits "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the

4

commencement of the case under this title;" and (3) section 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

642 F.3d at 1328.

The court in Jacks rejected these contentions. It held: (1) "The mere recordation of fees incurred by [a mortgagee] on its internal records, without any attempt to collect these fees from the debtor or estate or to modify the mortgage, is not an 'act' in violation of § 362(a)(3)" id. at 1329 (parenthetical added); (2) the mortgagee's mere recordation of fees on its internal records does not, without the fees actually being added to the debt secured by the mortgage, violate section 362(a)(5); and (3) the mortgagee's mere recordation of fees on its internal records does not, without more, violate section 362(a)(6). 642 F.3d at 1329-1330.

Based on these holdings, this Court finds that since OOMC did not, during the first case, attempt to collect the first-case fees from the plaintiffs, or add them to the mortgage debt, it did not violate the stay in that case while it existed.

The plaintiffs also contend that when OOMC posted the first-case fees in its "Customer Account Activity Statement," "without any prior notice or Court approval [that action] constitute[d] willful and intentional violations of the provisions of 11 U.S.C. §§ 105, 362, 502 and 506 as well as Rule 2016 of the Federal Rules of Bankruptcy Procedure," and, in addition, Bankruptcy Rule 3001. Amended Class Action Complaint, (A.P. Docket No. 33), page 8 (parentheticals added). According to the plaintiffs, those so-called "violations" are sanctionable as contempt of court pursuant under 11 U.S.C. § 105.

Again, the court in Jacks addressed the same issues. Writing for the Court, Circuit Judge Susan Harrell Black stated:

Assuming arguendo that § 506(b) and Rule 2016(a) require disclosure of postpetition fees in some circumstances, we hold those provisions are not violated when a creditor merely records costs it has incurred in association with a mortgagee's bankruptcy for internal bookkeeping purposes and makes no attempt to collect the fees or otherwise add them to the debtor's balance.

Id. at 1331-1332.

Based on that holding, this Court finds, "Assuming arguendo that § 506(b) and Rule 2016(a) require disclosure of postpetition fees in some circumstances," id., OOMC did not "violate" (plaintiffs' attorney's terminology) those provisions in the first case when all it did was record the first-case fees in its internal records. Similarly, there is no evidence in the record that OOMC made any attempt to collect them from the plaintiffs or that it added them to the plaintiffs' mortgage balance.

With respect to the property inspection fee posted to the plaintiffs' "Customer Account Activity Statement" after the order of confirmation was entered in the first case, this Court need not look any further than the Court of Appeals for the Eleventh Circuit decision in <u>Telfair v. First Union Mortg. Corp.</u>, 216 F.3d 1333 (11th Cir. 2000). In that case, the Court concluded that an oversecured creditor is not required to file anything with the bankruptcy court or seek the bankruptcy court's approval before obtaining reimbursement of postconfirmation fees pursuant to the mortgage agreement with the debtor. Until confirmation, an oversecured creditor is permitted only to apply for or include interest and fees in its proof of claim. 216 F.3d at 1338. But, postconfirmation, the terms of the mortgage and associated documents executed by the mortgagors govern the allowance and collection of fees without reference to the code sections and rules pertaining to filing proofs or claims and fee applications. 216 F.3d at 1339. Consequently, OOMC was not required to comply with any of those code sections and rules with respect to the postconfirmation fee that it posted to the plaintiffs' account during the first case.

In a brief they wrote, the plaintiffs apparently agree with that point of law. "American Home also contends that there is no duty to disclose post-confirmation fees and costs based on <u>Telfair</u>. The Plaintiffs agree with this contention and just note that they have not made a claim for any post-confirmation fees and costs, but only pre-confirmation fees and costs." <u>Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment and in Reply to Defendants' Responses to Plaintiffs' Motion for Summary Judgment</u> (A.P. Docket No. 156), page 28 n.12.[2]

If the above is not enough to deny the plaintiffs' motion for summary judgment as to their "first-case" allegations, dismissal of that first case is. When the plaintiffs' first bankruptcy case was dismissed, the question of whether OOMC was required to have "disclosed" its posting of the first-case fees in its internal records by including them in either a proof of claim or a Bankruptcy Rule 2016 application became academic and moot. The effect of dismissal of the case was, pursuant to 11 U.S.C. § 349(b), to "undo

---

[2]It is also interesting to note the presumption that goes along with the plaintiffs' contention that OOMC "violated" the bankruptcy rules and statutes pertaining to filing proofs of claims and fee applications by failing to include those first-case fees in either a proof of claim or a Bankruptcy Rule 2016 application. That contention presumes, for its validity, that OOMC had ample opportunity to file a proof of claim or a Bankruptcy Rule 2016 application for those fees but elected not to, that is, its failure to do so was its fault. The evidence does not support that presumption. The plaintiffs' case was dismissed involuntarily as a result of their recalcitrance. It is, therefore, impossible to know whether OOMC would have amended its proof of claim to include those fees had the case not been terminated prematurely. It is at least equally probable that the reason OOMC did not file a claim for those fees was because it was deprived of that opportunity by the plaintiffs' failure to make their plan payments, which in turn resulted in their case being prematurely terminated. Had OOMC been given the full opportunity offered by a more sustained effort by the plaintiffs, it may have amended its proof of claim to include those fees.

the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." Jacks, 624 F.3d at 1332 (quoting S.Rep. No. 95–989, at 49, 1978 U.S.C.C.A.N. 5787, 5835). Since the dismissal undid the first bankruptcy case, it undid any requirement for filing either a proof of claim or application for postpetition fees pursuant to Bankruptcy Rule 2016, that is if OOMC would have been required to if there had not been the dismissal.

Finally, the plaintiffs contend that OOMC's failure to include the first-case fees in either a proof of claim of Bankruptcy Rule 2016 application somehow conferred a benefit on OOMC, and that its retention of that benefit constitutes "unjust enrichment." Unjust enrichment in Alabama requires some affirmative action by the potential offender. Case law explains, "To prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." Scrushy v. Tucker, 955 So.2d 988, 1011 (Ala. 2006)(internal citations, quotation marks, and emphasis omitted). In other words, the defendant must, as a prerequisite to having been unjustly enriched, have obtained money from the plaintiff. Because OOMC did not, by merely posting the first-case fees on its internal records, obtain any money from the plaintiffs, it could not have been unjustly enriched under Alabama law.

### C. Conclusion to the "First Case" Allegations

In conclusion to the plaintiffs' allegations that OOMC did or did not do something during the course of the first case that rendered it liable to them in any respect, or otherwise rendered the claims filed in the present case objectionable, there remains no issue of material fact and OOMC and AHMS are entitled to summary judgment as a matter of law.

### IV. Findings of Fact, Contentions, and Conclusions of Law about the "Second-Case" Fees and OOMC's and AHMS's Actions in the Second Case

### A. Findings of Fact

As stated above, the plaintiffs filed a second Chapter 13 case, Bankruptcy Case No. 07-05759, on December 17, 2007. On February 1, 2008, OOMC filed Claim No. 5 in that case for $22,736.49 representing the plaintiffs' then mortgage arrears. That claim included: (a) $20,405.35 for unpaid monthly payments; (b) $1,590.18 for "Previous BK Fees & Costs;" (c) $82.80 for "Corporate Advances;" (d) $9.60 for a property inspection fee; (d) $85.00 for "Appraisal or BPO Fees;" and (e) $300.00 for "Post Petition Attorney fees & costs for Proof of Claim & review of Debtor Plan." The proof of claim reflects a reduction of $101.13 attributed to funds applied from the plaintiffs' suspense account, an account used to accumulate the plaintiffs' overpayments.

7

It is important to note that the $364.50 first-case fees were included in Claim No. 5, and the plaintiffs filed an objection to that claim on February 4, 2008.

As stated above, the plaintiffs' plan in their second case was confirmed on March 5, 2008. Again, as allowed by section 1322(b)(5) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), this plan included a provision for curing the arrearage they owed to OOMC. Through that provision, the plaintiffs proposed to pay OOMC $400 per month over the life of their plan. To fund those payments, and others, the plaintiffs' proposed to pay $1,300.00 per month to the Chapter 13 trustee for distribution to creditors. The plaintiffs proposed to pay OOMC directly for their regular, postpetition, monthly mortgage payments beginning with the January 2008 payment.

On July 30, 2008, AHMS filed a "Transfer of Claim Other Than For Security," representing OOMC's transfer of Claim No. 5 to AHMS. (Case Docket No. 80, Bankruptcy Case No. 07-05759.) That transfer also included the servicing rights to the underlying note and mortgage. Id.

The plaintiffs filed the pending adversary proceeding on October 30, 2008. That complaint supplanted and subsumed their objection to Claim No. 5. Because it did, at the January 6, 2009, hearing, they withdrew their objection to Claim No. 5. (Case Docket No.103, Bankruptcy Case No. 07-05759.)

On October 22, 2009, AHMS filed an amended Claim No. 5 for $23,776.94. That claim included: (a) $20,938.75 for unpaid monthly payments; (b) $782.68 for "Previous BK Fees and Costs;" (c) $990.91 for "Foreclosure Attorney Fees and Costs;" (d) $755.91 for "Accrued Late Charges;" and (e) $308.69 for "Escrow Shortage."

The Chapter 13 trustee's records reflect that as of May 22, 2012, he had paid, pursuant to the terms of the confirmed plan, $20,400 on OOMC's and AHMS's arrearage claim.

### B.  The Plaintiffs' Specific Contentions and the Court's Conclusions of Law

Again, most, if not all, of the plaintiffs' "second-case" contentions are addressed by decisions of the Court of Appeals for the Eleventh Circuit in Jacks v. Wells Fargo Bank (In re Jacks), 642 F.3d 1323 (11th Cir. 2011) and Telfair v. First Union Mortg. Corp., 216 F.3d 1333 (11th Cir. 2000). Again, their impact on the plaintiffs' specific contentions is discussed below.

The plaintiffs contend that because OOMC did not file either a proof of claim or Bankruptcy Rule 2016 application in their first bankruptcy case for the first-case fees, it could not file the proof of claim, or the amendment to that proof of claim, for those first-case fees in the second case.

8

Again, <u>Jacks</u> makes it abundantly clear that OOMC was not required to disclose its posting of those first-case fees to its internal records in either a proof of claim or 2016 application during the first case. In addition, by virtue of <u>Telfair</u>, OOMC was not required to file a claim or 2016 application for the postconfirmation fee it posted to the plaintiffs' account during the first case. Consequently, there was no violation of any bankruptcy rule or statute during the first case that mandates disallowance of any claims in the present case to the extent they include those first-case fees.

Even if OOMC had been required to disclose its posting of those first-case fees to its internal records in either a proof of claim or 2016 application during the first case, dismissal of the first case eliminated any such requirement <u>ab initio</u> as if the first case had never existed. In effect, dismissal of the first case transformed the first-case fees from postpetition debts in the first case into prepetition debts as to the second case.

The plaintiffs strenuously argue that by filing a proof of claim in the second case for the first-case fees, and thereby availing itself of the only Congressionally prescribed and permissible method of presenting its claim against the debtor for the first-case fees, OOMC inexplicably violated the nonexistent stay that was extinguished by dismissal of the plaintiffs' first case. How could that be? When the stay in the first case was extinguished, it was gone for good and no longer capable of being violated. Nothing OOMC could have done while that case was in existence, short of a stay violation or violation of any other rule or statute, would have planted an invisible, inchoate pupa that could metamorphize retroactively into a full-fledge adult stay violation as a result of OOMC's performing an innocuous and entirely legal act in a subsequent case. And nothing OOMC did later could have resurrected it. On dismissal of the first case, OOMC was free to collect its debt from the debtor, including the first-case fees, unfettered by any bankruptcy constraints, rules, or statutes. Only by the stay that arose in plaintiffs' second case would OOMC's extra-bankruptcy collection efforts be constrained. But even that did not constrain OOMC's intra-bankruptcy efforts <u>a fortiori</u> by availing itself of the mechanisms provided by Congress for that purpose, that is, 11 U.S.C. § 501, even if its claim includes things it could have asked for in the first case but, according to the plaintiffs, did not.[3]

In his oral argument, plaintiffs' attorney itemized $238.40 in second-case fees that his clients now contend OOMC improperly posted to their mortgage account during the second bankruptcy case without including them in either a proof of claim or Bankruptcy Rule 2016 application. Those were:

---

[3]The cases cited by the plaintiffs which sanction the retention by a bankruptcy court of jurisdiction over an adversary proceeding after dismissal of the main bankruptcy case are not relevant. There was no adversary proceeding in the plaintiffs' first case. Neither the stay, nor any other rule or statute that could have formed the basis of an adversary proceeding or justified the filing of one during the first case, was violated.

a.  A property inspection fee of $9.60 on December 20, 2007.
b.  A property inspection fee of $9.60 on January 24, 2008.
c.  A property inspection fee of $9.60 on February 22, 2008.
d.  A property inspection fee of $9.60 on March 13, 2008.
e.  An attorney's fee of $200.00 on March 27, 2008.

The plaintiffs' contend that <u>Jacks</u> is factually distinguishable because AHMS actually reimbursed itself for a portion of these "undisclosed" (plaintiffs' counsel's characterization) second-case fees through application of funds which had accumulated in the plaintiffs' suspense account from overpayments made by them. Specifically, entries in the "Customer Account Activity Statement" reflect that the plaintiffs made two mortgage payments of $1,725, (one each on February 5, 2008 and March 21, 2008), and one payment of $1,775 on April 23, 2008.  The first two of those payments were inexplicably $123.71 more than was required by the plaintiffs' mortgage note and the last was $173.71 over their required payment. Consequently, OOMC placed $421.13, the $274.42 from the first two payments and $173.71 from the last, into the plaintiffs' "suspense" account.

The plaintiffs contend that on July 31, 2008, AHMS used that $421.13 to reimburse itself for postpetition attorneys' fees <u>it</u> had been required to pay in servicing their mortgage. Indeed, an entry dated July 31, 2008 in the "Customer Account Activity Statement" reflects an "attorney <u>advance</u> repayment" in the amount of $421.13. While that entry does not indicate the origin of the $421.13 used to make that repayment, Ms. Alicia Fisher, a senior bankruptcy specialist for OOMC and the bankruptcy manager for AHMS, verified in her deposition that the money came from the suspense account. <u>Deposition of Alicia Fisher</u>, page 162, <u>Plaintiffs' Evidentiary Submission in Support of Motion for Partial Summary Judgment</u> (A.P. Docket No.  139), Exhibit A; <u>Defendants' Joint Evidentiary Submission in Opposition to Plaintiffs' Motion for Class Certification</u> (A.P. Docket Nos.141 and 142), Exhibits: Depositions, Exhibit D.  Similarly, Ms. Venetia Stewart, a Senior Bankruptcy Specialist for AHMS, represented in her affidavit that the $421.13 used for "attorney advance repayment" came from the suspense account. <u>Exhibit A</u>, "Affidavit" (A.P. Docket No. 169).

The plaintiffs contend that if the $421.13 was used to pay postpetition attorneys fees, that fact distinguishes <u>Jacks</u> and quickens their causes of action for a stay violation and for contempt for noncompliance with 11 U.S.C. §§ 502 and 506, as well as Bankruptcy Rules 2016 and 3001, in regard to the second-case fees. There are several reasons why this Court disagrees.

First, the plaintiffs did not offer any evidence that the $421.13 was used by OOMC to pay attorneys' fees posted to their "Customer Account Activity Statement" postpetition.  While they point to two entries in the "Customer Account Activity Statement" which reflect that on March 27, 2008, OOMC made "attorney advances" of $200 and on May 19, 2008, OOMC made  "attorney advances" of $50, the Court cannot connect the dots between those entries and the $421.13 reimbursement. Just because

10

OOMC made those "attorney advances," there is no support for the inference that the July 31, 2008, entry pertains to or evinces reimbursement of those particular "attorney advances." The amount reimbursed is not even the same as the postconfirmation advances, which plaintiffs' counsel admits he cannot explain, and cannot identify what was reimbursed from the remaining $171.13 taken from suspense.

On the other hand, OOMC and AHMS have provided concrete evidence that negates the plaintiffs' theory that the $421.13 was used in part to reimburse the $200 in "attorney advances" posted on March 27, 2008. Ms. Fisher testified in her deposition that the $421.13 was used to reimburse "pre-petition fees." Deposition of Alicia Fisher, page 227, Defendants' Joint Evidentiary Submission in Opposition to Plaintiffs' Motion for Class Certification (A.P. Docket No. #141&142), Exhibits: Depositions, Exhibit D. In addition, Ms. Stewart represented in her affidavit that the $421.13 was applied to reimburse, albeit erroneously, "pre-petition fees and costs incurred by OOMC during the Plaintiffs' first bankruptcy, as reflected by the February 1, 2008 Proof of Claim filed by OOMC." Exhibit A, "Affidavit" (A.P. Docket No. 169). The plaintiffs' have not offered any evidence to refute that testimony, nor have they pointed to anything in the record which contradicts it. Consequently, the Court must conclude that the $421.13 in the suspense account was applied to reimburse prepetition fees instead of second-case postpetition fees as alleged by the plaintiffs.

Furthermore, the $421.13 in the suspense account on March 27, 2008, came from overpayments voluntarily made by the plaintiffs to OOMC on February 5, 2008, March 21, 2008, and April 23, 2008. Pursuant to the confirmation order, none of those payments were made by the trustee from property of the bankruptcy estate. That order specifically provides that, "The debtor's [sic] mortgage debt to Option One Mortgage shall be paid directly to the mortgagee beginning January, 2008...." (Docket No. 55, Bankruptcy Case No. 07-05759.) Of course, the importance of that provision is that the January and February 2008 payments and, a fortiori, the March and April 2008 payments which came due postconfirmation, were to be made by the plaintiffs from non-estate property. See Telfair v. First Union Mortg. Corp., 216 F.3d at 1340. Therefore, because the source of the funds in the plaintiffs' suspense account was non-estate property, and those funds were not available to the trustee to make plan payments under the terms of the confirmation order, those funds were not property of the bankruptcy estate. Id. And because they were not property of the bankruptcy estate, AHMS's use of those suspense funds to pay amounts owed to it under the terms of the mortgage and note could not possibly have violated the automatic stay. The Court in Telfair recognized:

> In this case, after confirmation, only the amount required for the plan payments remained property of the estate. Telfair's regular loan payments, made outside of the plan, were therefore no longer property of the estate and First Union's application of a portion of those payments to attorney's fees pursuant to the Deed did not violate section 362(a).

Id.

Moreover, at the hearing of this matter, plaintiffs' counsel whittled down the plaintiffs' list of objectionable so-called "undisclosed" attorney's fees to two. Those were the $300 attorney's fee that was in fact "disclosed" in the first proof of claim filed by OOMC in the plaintiffs' second bankruptcy case, and the $200 "attorney advances" posted on the plaintiffs' "Customer Account Activity Statement" on March 27, 2008. Given these amounts, AHMS had only two options. One, if AHMS used the $421.13 from the plaintiffs' suspense account to reimburse itself for the $300 fee, counsel's claim that AHMS used the funds to pay "undisclosed" fees is inaccurate because: (1) the $300 was disclosed in the first proof of claim filed by OOMC in the plaintiffs' second bankruptcy case; (2) the failure to claim those fees in the plaintiffs' first bankruptcy case is of no consequence because that case was dismissed; and (3) per Jacks, it was not required to file a proof of claim for that fee. Two, if AHMS used the $421.13 from the plaintiffs' suspense account to reimburse itself for the $200 fee, counsel's claim that AHMS used the funds to pay fees that were required by law to be "disclosed" and claimed, either through a Rule 2016 application or a proof of claim, is without basis. That fee was posted after confirmation, and, therefore, according to Telfair, AHMS was not required to file anything in the bankruptcy case to obtain reimbursement of that fee from the plaintiffs' postconfirmation payments. Telfair v. First Union Mortg. Corp., 216 F.3d at 1338 (affirming bankruptcy and district courts' determination "that section 506(b) only governs fee petitions until the time of confirmation," and "[b]ecause the attorney's fees incurred by [the mortgagee] arose from its attempts to cure post-confirmation defaults, ... the terms of the Deed, without reference to section 506(b), governed the award of fees," and the mortgagee was not required to file a proof of claim or any other document pursuant to section 506 to recover those fees but could do so unilaterally without permission or approval of the bankruptcy court if authorized by the mortgage documents).

Here again, the Court is compelled to point out that the plaintiffs explicitly conceded the later point regarding postconfirmation fees in one of his briefs, specifically A.P. Docket No. 156. They wrote, "American Home also contends that there is no duty to disclose post-confirmation fees and costs based on Telfair. The Plaintiffs agree with this contention and just note that they have not made a claim for any post-confirmation fees and costs, but only pre-confirmation fees and costs." Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment and in Reply to Defendants' Responses to Plaintiffs' Motion for Summary Judgment (A.P. Docket No. 156 filed under seal on August 17, 2010).

At the hearing on this matter, plaintiffs suggested that they may amend their complaint if AHMS used the $421.13 to pay attorneys' fees that were included in the proofs of claims OOMC or it filed in the plaintiffs' second bankruptcy case. The basis would be AHMS's alleged violation of the confirmation order. Of course that cannot be done verbally during oral argument on the pending matters. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the

12

complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Accord Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 53 (1st Cir. 2011); Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1309-1310 (11th Cir. 2007); Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1296-1297 (11th Cir. 2006); Tucker v. Union of Needletrades, Industrial and Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005).

From a more substantive perspective, the Court in Telfair specifically concluded that its decision would have been the same even if the mortgagee in that case had applied the debtor's postconfirmation payments to pay amounts that the trustee was supposed to pay through the plan. It recognized, "Even if First Union technically applied plan payments to attorney's fees and then applied a regular loan payment towards the plan payments, our conclusion would not be different because, ultimately, all the plan payments were properly applied, as evidenced by the bankruptcy court's discharge of Telfair's plan." 216 F.3d at 1340 n.14. In this case, there has been no contention that either OOMC or AHMS misapplied plan payments and no proof of any such misapplication has been offered by the plaintiffs.

The only information offered by the plaintiffs as evidence that either defendant received payment for any of the so-called "undisclosed" fees and costs itemized by their attorney at the hearing of this matter is the March 31, 2008, entry in the "Customer Account Activity Statement" maintained by AHMS. That entry reflects an "attorney advance repayment" in the amount of $421.13. Obviously, that information does not suggest or tend to prove, and the plaintiffs do not argue otherwise, that any of the second-case property inspection fees have been paid, collected, or reimbursed. Consequently, it cannot be concluded that any of those property inspection fees have been paid, collected, or reimbursed. Jacks dictates, therefore, the conclusion that no stay violation has taken place by virtue of the defendants' failure to apply to the Court for, or file a proof of claim for, or otherwise not "disclose" those second-case property inspection fees.

As stated above, the plaintiffs also contend that OOMC and AHMS "violated" sections 502 and 506 of the Bankruptcy Code and Bankruptcy Rules 3001 or 2016 by not claiming the "undisclosed" attorneys fees and property inspection fees in either a proof of claim or a 2016 application. Again, this Court disagrees.

To recap, the first-case fees, the $64.50 in property inspection fees, and the $300 in attorneys fees not claimed by OOMC in the plaintiffs' first bankruptcy case, but claimed and "disclosed" in the first proof of claim filed by OOMC in the plaintiffs' second bankruptcy case, are not objectionable as violations of the code sections and rules pertaining to filing proofs of claims and fee applications. Again, the reasons are these: (1) dismissal of the first case eliminated any requirement that those fees be claimed or applied for in that case assuming arguendo any such requirement existed in the first

13

place; (2) pursuant to Jacks, those fees were not required to be claimed or applied for in the first case because there was no attempt to collect them in that case, and they were not in fact collected in that case; (3) pursuant to Jacks, failure to include those fees in the proofs of claims that OOMC filed in that case did not render those proofs of claims objectionable under 11 U.S.C. § 502(b) or Bankruptcy Rule 3001; and (4) OOMC complied with the code sections and bankruptcy rules that the plaintiffs claim were "violated" in the second bankruptcy case by "disclosing" and claiming those fees in the first proof of claim it filed in that case.

In addition, neither OOMC or AHMS "violated" any of the code sections and bankruptcy rules pertaining to filing proofs of claims and fee applications with respect to either the $38.40 in property inspection fees or the $200 attorneys' fee enumerated by plaintiffs' counsel as having been "undisclosed" in the second bankruptcy case.  By confirmation, the plaintiffs have not offered any evidence, nor otherwise pointed out anything in the record, which suggests: (1) any of those second-case fees have been collected; (2) any attempt has been made by either defendant to collect them; or (3) those fees have been added to the plaintiffs' mortgage debt. Consequently, Jacks mandates: (1) neither defendant was required to file any sort of application or proof of claim for any of those fees; and (2) none of the proofs of claim filed by OOMC and AHMS are subject to objection and disallowance on the grounds that those fees were not included or claimed in those proofs of claims.

Also precluded is the conclusion that AHMS "violated" any of the code sections statutes and rules pertaining to filing proofs or claims and fee applications with respect to either the $9.60 property inspection fee posted by OOMC to the plaintiffs' "Customer Account Activity Statement" on March 13, 2008, or the $200.00 attorney's fee posted on that document on March 27, 2008. Both were posted after confirmation.  As we know, an oversecured creditor is permitted only to apply for or include interest and fees in its proof of claim until confirmation. Telfair.  But the terms of the mortgage and associated documents executed by the mortgagors govern the allowance and collection of fees postconfirmation without reference to the code sections and rules pertaining to filing proofs or claims and fee applications. Telfair.  Consequently, AHMS was not required to comply with any of those code sections and rules with respect to the postconfirmation fees that it posted to the "Customer Account Activity Statement."

But, like here, the debtor in Telfair argued: (1) "the mutable nature of a Chapter 13 proceeding even after confirmation counsels in favor of bankruptcy courts using section 506(b) to maintain their control over post-confirmation awards of attorney's fees," id. at 1339, and that not permitting bankruptcy courts to use section 506(b) to maintain control over postconfirmation awards of fees would allow " 'secured creditors in Chapter 13 cases... to run amok" following confirmation." 216 F.3d at 1339 (later statement quoted by the court from the Appellant's brief in that case) (footnote omitted). The court responded that the terms of the mortgage and note as well as the provisions of 11 U.S.C. § 1322 provided adequate safeguards to prevent any such abuse.  Writing for the Court, Circuit Judge Phyllis A. Kravitch explained, "We appreciate Telfair's

concern, but are satisfied that the terms of debt instruments agreed to by debtors and creditors provide adequate protection for Chapter 13 debtors." Id. She added, "Section 1322, which also governs post-confirmation awards of interest or fees, provides further protection to homeowners and homestead lenders." Id. n.11.[4]

The plaintiffs also contend, with respect to the second-case fees posted by OOMC to is internal records and those enumerated by their attorney at the hearing of this matter, that OOMC's and AHMS's failure to include those second-case fees in either a proof of claim or a Bankruptcy Rule 2016 application somehow conferred a benefit on OOMC and AHMS. The plaintiffs conclude that retention of that benefit constitutes "unjust enrichment."

As stated above, unjust enrichment in Alabama requires some affirmative action by the potential offender. Case law explains, "To prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." Scrushy v. Tucker, 955 So.2d 988, 1011 (Ala. 2006)(internal citations, quotation marks, and emphasis omitted). In other words, the defendant must, as a prerequisite to having been unjustly enriched, have obtained money from the plaintiff. And since the plaintiffs' have not proffered any evidence, nor otherwise pointed out anything in the record, which suggests that any of those second-case fees have been collected, it must be concluded that neither OOMC nor AHMS were enriched, whether justly or not, as a result of the former's posting them to its "Customer Account Activity Statement."

Moreover, the plaintiffs admit that the defendants are oversecured creditors and that the mortgage and note which they signed authorize the second-case fees and require them to be paid. Section 1322(e) provides that "Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). So even if, assuming arguendo, the defendants had used suspense funds to reimburse themselves for the second-case fees, it would not, as a matter of law, have constituted "unjust enrichment." There would have been nothing "unjust" about it because: (a) the outlays being reimbursed were occasioned by the plaintiffs' recalcitrance in defaulting on their mortgage payments; (b) the plaintiffs admittedly owe the money; and (c) both the mortgage documents and section 1322(e) require them to

---

[4] For cases filed after December 1, 2011, relatively new Bankruptcy Rule 3002.1 requires secured creditors in Chapter 13 cases to disclose mortgage related fees and expenses and specifies how and when those disclosures are required. This gives debtors the opportunity to test and be heard on the validity of those fees and expenses and should also serve to prevent any such abuse.

pay it. And there would have been no "enrichment" in it because: (a) the defendants would have been reimbursing themselves only for funds which they had already been forced to payout as a result of the plaintiffs' default; and (b) these were funds that were due to be reimbursed by the plaintiffs.

And finally, the plaintiffs object in Count Five of their complaint to the allowance of Claim No. 5 by OOMC on February 1, 2008, and amended by AHMS on October 22, 2009, "on the grounds that the amount listed on the proof of claim is incorrect in that additional fees, costs, and other charges have already been assessed against the account and were not disclosed." Amended Class Action Complaint, (A.P. Docket No. 33), page 10. Again, the Court in Jacks considered the same issue. It ruled that a mortgagee's, "failure to include the... fees on the proof of claim does not provide a valid basis for an objection [to the claim]." 642 F.3d at 1333 (parenthetical added). Writing for the Court, Circuit Judge Susan Harrell Black stated that conclusion in these terms:

> Under § 502(b)(1), a claim asserted in a proof of claim is allowed in the amount asserted "except to the extent that [ ] *such claim* is unenforceable." "Such claim" refers to the claim actually asserted on the proof of claim. As to this amount—in this case, $162,205.57—the Jacks have identified no reason why such amount is unenforceable. Wells Fargo was therefore entitled to summary judgment.

Id.

Because the plaintiffs have not identified any reason why the claim actually asserted by OOMC and AHMS in Claim No. 5 is unenforceable, and because the failure by those defendants to include other sums in that claim does not, pursuant to Jacks, render it unenforceable or require its disallowance, the plaintiffs have failed to demonstrate any basis for disallowance of that claim.

## C. Conclusion of the "Second Case"

In conclusion to the plaintiffs' allegations that either OOMC or AHMS did or did not do something during the course of the second case that rendered either of them liable to the plaintiffs in any respect, or otherwise rendered the claims filed in the present case objectionable, there remains no issue of material fact and OOMC and AHMS are entitled to summary judgment as a matter of law.

## V. The Plaintiffs' Motion to Strike Portions of Alicia Fisher's Affidavit is Moot

Also pending is a motion by the plaintiffs to strike paragraphs 7, 8, 14, 15, 23 and 26 of Ms. Alicia Fisher's affidavit submitted by the defendants in opposition to the plaintiffs' summary judgment motion and in support of their own. Plaintiffs' Motion to Strike Portions of the July 8, 2010 Affidavit of Alicia Fisher. A.P. Docket No. 155. The

Court did not find it necessary to rely on any portion of Ms. Fisher's affidavit in either reaching the conclusions expressed in this memorandum and ruling on the parties' summary judgment motions. Therefore, the plaintiffs' motion to strike those specified paragraphs of that affidavit is moot.[5]

## VI. The Plaintiffs' Requests for Injunctions are Without Merit

The plaintiffs' seek to enjoin OOMC and AHMS from "Assessing and/or collecting postpetition fees from chapter 13 plaintiffs without disclosure and approval by the court." Amended Class Action Complaint at 15, A.P. Docket No. 33. That request must be denied for these reasons:

1. Since Telfair provides that oversecured creditors are not required to disclose postconfirmation fees to the bankruptcy court, or seek approval for them, an injunction would have to be limited to postpetition, preconfirmation fees. In the present case, that would, according to plaintiffs' counsel, include only the $28.80 in property inspection fees posted to the "Customer Account Activity Statement" after March 5, 2008, and not listed in any proof of claim. OOMC is in no position to collect or attempt to collect that amount because it transferred its claim. And because the plaintiffs' present case is close to conclusion, the likelihood of AHMS collecting or attempting to collect that $28.80 from estate property, that is, the funds being paid by the plaintiffs to the trustee each month, would seem almost nonexistent, especially given it has not attempted to do so yet.

2. Since Jacks provides that an oversecured creditor is not required to include the postpetition, preconfirmation fees that it has merely posted to its internal records respecting a debtor's account in either a proof of claim or Bankruptcy Rule 2016 application, any such injunction would have to be limited to efforts to collect such fees from property of the bankruptcy estate, other than by including them in either a proof of claim or Bankruptcy Rule 2016 application. In that, it would be redundant of the automatic stay, and therefore unnecessary, even assuming, arguendo, the stay prohibits such collection, as the plaintiffs' argue.

3. There is no evidence in this case that either defendant collected or attempted to collect postpetition, preconfirmation fees, other than by including them in a proof of claim filed in the bankruptcy court. Therefore, the Court has no basis to conclude that they are likely to engage in any such activities in the future.

---

[5] If the name sounds familiar, the Court did rely on the "Deposition of Alicia Fisher", Plaintiffs' Evidentiary Submission in Support of Motion for Partial Summary Judgment (A.P. Docket No. 139), Exhibit A; Defendants' Joint Evidentiary Submission in Opposition to Plaintiffs' Motion for Class Certification (A.P. Docket Nos.141 and 142), Exhibits: Depositions, Exhibit D.

4. An injunction would overlap and conflict with, and is therefore preempted by, new Bankruptcy Rule 3002.1, which took effect on December 1, 2011. That rule governs in cases filed after that date, and may be made operative in cases pending on that date "insofar as just and practicable...." See http://www.uscourts.gov/ uscourts/ RulesandPolicies/ rules/ SupremeCourt2011/ SC_Letters_Orders.pdf. The rule provides:

(a) In General

This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.

(b) Notice of Payment Changes

The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

(c) Notice of Fees, Expenses, and Charges

The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

(d) Form and Content

A notice filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim. The notice is not subject to Rule 3001(f).

(e) Determination of Fees, Expenses, or Charges

On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment

18

of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

(f) Notice of Final Cure Payment

Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

(g) Response to Notice of Final Cure Payment

Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

(h) Determination of Final Cure and Payment

On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

(I) Failure to Notify

If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court

19

may, after notice and hearing, take either or both of the following actions:

> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1

5. The court in <u>Jacks</u> ruled that the same contention, (that is, a mortgagee may in the future attempt to collect so-called "undisclosed," unclaimed, and unapplied for fees from a mortgagee, or add such fees to a mortgagor's mortgaged debt), is not ripe for adjudication until one of those events actually occurs. <u>Jacks</u>, 642 F.3d at 1332. Consequently, the claim made by the plaintiffs in their complaint, that is, that OOMC and AHMS <u>may</u> "violate" the code sections and bankruptcy rules related to filing claims and making applications for fees by endeavoring to collect those property inspection fees in the future or add those fees to the plaintiffs' mortgage balance is likewise not ripe for adjudication.

The plaintiffs' also seek an injunction requiring OOMC and AHMS, "to make an accounting of the above described charges and disgorge all such amounts into the Court for the benefit of the Class...." <u>Amended Class Action Complaint</u> at 15, A.P. Docket No. 33. There has been no class certified and none will be. Furthermore, the debtor has not proved that either OOMC or AHMS has actually collected any postpetition, preconfirmation fees in their case that were not included in a proof of claim. Consequently, there is nothing to account for or disgorge.

Finally, the plaintiffs seek an injunction enjoining OOMC and AHMS from, "Placing the form of 'notice' as used by Defendants in the March 8, 2008 [sic] Proof of Claim, or any such similar 'notice', that purports to shift the burden of discovering unapproved and/or undisclosed fees to the Debtor." <u>Amended Class Action Complaint</u> at 15, A.P. Docket No. 33. That sentence, contains a typographical error. It is actually intended to refer to the proof of claim filed by OOMC in the plaintiffs first bankruptcy case on March 8, 2007. The following language, which appears on "Exhibit A" to that proof of claim, entitled "Itemization of Total Debt and Arrearages as of the Time of Filing," is the real target of the plaintiffs' injunction request. It reads:

20

Please be advised that additional fees and costs have been incurred for the post-petition preparation and filing of this Proof of Claim. These fees and costs have not been included in the Proof of Claim. If the debtor(s) want these fees and costs included in the Proof of Claim so that the subject loan is current upon completion of the Bankruptcy Plan, please contact Moss Codilis, L.L.P. at (303) 799-6966.

"Exhibit A" to Claim No. 6 filed in Bankruptcy Case No. 07-00675-BGC13 on March 8, 2007.

The plaintiffs have not offered any evidence that they have been mislead or injured in any manner by that language. On its face, it is innocuous and has no legal effect whatsoever. It does not, as a matter of law, operate in fact to shift the burden of discovering fees onto a debtor. Furthermore, the plaintiffs have not offered any evidence that either OOMC or AHMS will include that language in future proofs of claims. In fact, there is no evidence that AHMS has ever employed that language in a proof of claim. Certainly it did not use it in the proof of claim that it filed in the plaintiffs' second case. Moreover, there is no evidence that OOMC is likely to use that language in the future. It did not use it in the other proof of claims that it filed in the plaintiffs' bankruptcy cases and it is now almost out of the mortgage servicing business as a result of its sale of its servicing related assets to AHMS.

Moreover, in line with the reasoning in <u>Jacks</u> in relation to possible future collections of so-called "undisclosed" fees, the contention that either of the defendants may include that language in proofs of claims in the future is not ripe for adjudication. And finally, the recently adopted Bankruptcy Rule 3002.1, as well as the recent amendments to Bankruptcy Rule 3001(c), now dictate in detail what a secured creditor must include in a proof of claim and how the creditor must disclose fees and costs postpetition. The addition of such language as is objected to by the plaintiffs herein would not diminish the requirements of those rules or absolve a mortgagee from complying with them. Therefore, any such injunction would be redundant and accomplish nothing more than what those rules are intended to accomplish. Consequently, no such injunction is warranted.

## VII. Miscellany

Plaintiffs contend that the Court in <u>Jacks</u> intended to establish a paradigm for causes of action against mortgagees for stay violations, as well as violations of the rules and statutes pertaining to filing proofs of claims and fee applications in bankruptcy based on the posting of mortgage related fees and expenses to their internal records. They argue that the anchor of that paradigm is collection or attempted collection of those fees and expenses. This Court disagrees. Writing for the panel, Circuit Judge Black specifically stated that the absence of collection definitively precludes a stay violation, but she did not endeavor to define under what circumstances collection or attempted collection of the posted fees would constitute a stay violation. Moreover, with

21

respect to the plaintiffs' allegations with respect the defendants' so-called "violations" of Section 506 and Bankruptcy Rule 2016, Judge Black merely assumed "arguendo," (meaning "for the sake of argument," Black's Law Dictionary 115 (8th ed. 2004)), that those provisions may impose a duty in certain circumstance on a secured creditor to file a proof of claim or Bankruptcy Rule 2016 application for expenses that it posts to its records with respect to a debtor's mortgage. By use of that term, she specifically exhibited her intention not to recognize the truth or validity of the assumption that those provisions establish any such duty. Nor did she endeavor to speculate about when those provisions might impose any such duty or what the consequences might be if those provisions established such a duty and the creditor collected or attempted to collect the posted fees.

Furthermore, Judge Black concluded without reservation that the failure of a secured creditor to include expenses that it posted to its records with respect to a debtor's mortgage does not constitute a "violation" of 11 U.S.C. §§ 501 or 502. Section 502(b)(1), which provides for allowance of a claim except to the extent that such claim is "unenforceable," only refers to amounts claimed and not to amounts not included in a proof of claim. Therefore, a mortgagee's failure to include expenses, whether collected or not, in a proof of claim would constitute no "violation" of either section 501 or 502.

Both plaintiffs testified in their depositions that they have not been damaged or injured in any way by OOMC's and AHMS's posting the fees and costs in the "Customer Account Activity Statement" that were itemized at the hearing of this matter. Injury in fact is an indispensable element of the statutory cause of action for violation of the stay. Section 362(k)(1) includes, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1)(emphasis added). See In re Hutchings, 348 B.R. 847, 884-902 (Bankr. N.D. Ala. 2006) and the extensive case citations therein. Because, by their own admissions, they have not been injured by anything done by OOMC or AHMS, the plaintiffs have no cause of action against those entities for violation of the stay even assuming, arguendo, a stay violation occurred in the form alleged by the plaintiffs.

**VIII. Conclusion**

The standard for granting summary judgment in this Circuit is, "Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). The Court has applied that standard here.

The parties agree that there are no genuine issues of material fact that must be resolved in order to decide the legal questions. The Court agrees.

As such, based on those undisputed facts, and as discussed by the findings and conclusions expressed above, the Court concludes that, as a matter of law, judgment shall be entered in favor of the defendants, OOMC and AHMS, and against the plaintiffs.

A separate order in conformity with this memorandum opinion will be entered.

Dated: September 25, 2012   /s/Benjamin Cohen
            BENJAMIN COHEN
            United States Bankruptcy Judge

BC:sm